1

2

3

4

5

6

7

8                          IN THE UNITED DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL D. STORMAN,

11            Plaintiff,                      No. CIV S-07-2113 GEB GGH PS[1]

12       vs.

13   U.S. DEPT. OF HEALTH AND            FINDINGS AND RECOMMENDATIONS
     HUMAN SERVICES, CALIFORNIA
14   DEPARTMENT OF HEALTH CARE
     SERVICES,
15

16            Defendants.

17   _____/

18            Presently pending before this court are:  (1) the motion to dismiss filed by

19   defendant California Department of Health Care Services ("CDHCS") on April 11, 2008; (2) the

20   motion for summary judgment filed by plaintiff on April 15, 2008; and (3) the cross-motions for

21   summary judgment filed by defendants CDHCS and the U.S. Department of Health and Human

22   \\\\\

23   \\\\\

24   _____

25       [1]  By order filed March 7, 2008, this court related the instant case to Storman v. California
     Department of Health Services et al, Civ. No. 06-2892 GEB GGH PS, in which judgment was
     entered adversely to plaintiff on April 10, 2007.  Plaintiff's appeal to the Ninth Circuit, filed
26   April 23, 2007, was denied on January 23, 2009.

1

1  Services' ("DHHS") on June 16, 2008.[2]  By order filed April 29, 2008, this court deemed all

2  matters submitted for decision on the papers.[3] [4]

3          For the reasons that follow, the court recommends that defendant CDHCS'

4  motion to dismiss be granted, the cross-motions by both defendants be granted, and plaintiff's

5  motion for summary judgment be denied.

6  I.  BACKGROUND

7          A.  Plaintiff's Allegations

8          Plaintiff challenges the denial of his prescription drug coverage for Viagra under

9  both Medicare, the federally-funded medical benefits program for individuals age 65 and older,

10  and Medicaid ("MediCal" in California), funded both federally and by the state to provide

11  medical benefits to the indigent.  Plaintiff is a "dual eligible beneficiary" who meets the

12  eligibility requirements for both Medicare and Medi-Cal.

13          Plaintiff's complaint, filed October 9, 2007, is set forth in its entirety (not

14  including exhibits):

15          This is an appeal for court review from a series of appeals on the Federal
        level and a legal claim against the California Department of Health Services (see
16          enclosed exhibits).  The plaintiff is a disabled person suffering from multiple
        disabilities and medical conditions.  The defendants are the U.S. Department of

17

18          [2]  CDHCS twice-filed its oppositions/cross-motion, on June 16, 2008 (Docket Entry No.
19  50)  and June 17, 2008 (Docket Entry No. 52), respectively.

20          [3]  In a letter filed June 20, 2008, plaintiff asserts that DHHS untimely filed and served its
    opposition and cross-motion.  The court's April 29, 2008 order directed both defendants to file
21  and serve their oppositions and cross-motions by June 16, 2008.  DHHS timely filed its motion
    on June 16, 2008, which included a certificate of service by mail made upon plaintiff the same
    day.  Plaintiff's receipt of defendant's motion by mail two days later does not render such service
22  untimely.  See Fed. R. Civ. P. 5(b)(2)(C) ("service is complete upon mailing").

23          [4]  Previously pending was plaintiff's interlocutory appeal to the Ninth Circuit of this
    court's January 25, 2008 order denying plaintiff's request for appointment of counsel.  While the
24  matter that did not present a controlling question of law that would deprive this court of
    jurisdiction pending resolution of the appeal, cf., 28 U.S.C. § 1292 (b) (providing for immediate
25  appeals from orders involving controlling questions of law, the resolution of which may advance
    the termination of the case), the Ninth Circuit dismissed the appeal for lack of jurisdiction on
26  July 3, 2008.

Health and Human Services who administer the Medicare Part D program and the California Department of Health Services who administer the Medi-Cal program (i.e., Medi-Cal Director).

On January 1, 2007, Congress and the U.S. President signed into law an exclusion from Part D Medicare prescription drugs that barred Medicare patients from purchasing Viagra (under the Medicare Part D plan). About the same time, Medi-Cal barred Medi-Cal patients from obtaining Viagra by means of a TAR or Treatment Authorization Request (at no cost). Plaintiff, who has dual Medicare Part D and Medi-Cal coverage, was barred from obtaining Viagra – unless he pays $88.00 for a bottle of six Viagra, which he can not do on an income of $876 per month (SSDI & SSI).

Plaintiff, herein, makes the following legal claims about the above matter(s). That Medicare Part D's barring of Viagra as a prescription drug is discriminatory against the male gender under the U.S. Sex Discrimination Act and that it is also unconstitutional because it prevents men from living a life guaranteed by life, liberty and the pursuit of happiness under the U.S. Constitution. When making his appeals, plaintiff appeals about the above claims could not be ruled on by the various administrative agencies because of lack of jurisdiction. [Sic]. Therefore, plaintiff beseeches the court to rule on these legal claims, and reminds the court that the government would not do to women in denying birth control pills what they have backgrounded to plaintiff as a disabled man in denying him Viagra.

Finally, plaintiff also contends that the California Medi-Cal Director has violated Title II of the Americans with Disabilities Act by denying a TAR request for plaintiff as a disabled man out of medical necessity. Plaintiff's request for Viagra is out of medical necessity because plaintiff lacks stamina and energy due to numerous conditions including major depression, Tourette syndrome, hemochromatosis, Barrett's disease, and anxiety disorder and acid-reflux.

Plaintiff seeks the following in restitution for being denied Viagra under his Kaiser Senior Advantage Medicare Part D & Medi-Cal plans:

1)      That plaintiff be allowed to[] purchase Viagra under Medicare Part D for a bottle of six pills at $3.10 per bottle.

2)      That Medi-Cal grant plaintiff's TAR requests for Viagra for a bottle of 6 pills at no charge.

3)      That defendants pay plaintiff $5,000 each for punitive and compensatory damages as a result of the pain and suffering they have caused plaintiff in denying him Viagra.

Plaintiff challenges that portion of the Medicare Prescription Drug, Modernization and Improvement Act of 2003 ("MMA"), 42 U.S.C. § 1395w-101, et seq., that excludes federal and state coverage for drugs or agents used for the treatment of sexual dysfunction. The State of

1  California, through its Medi-Cal program, has implemented the MMA through enactment of

2  Welfare and Institutions Code § 14133.23.

3       B.  <u>Administrative Proceedings</u>[5]

4          As a dual eligible enrollee, plaintiff originally received prescriptions for Viagra;

5  however, once the change in law excluding this drug became effective on January 1, 2007,

6  plaintiff's insurance, Kaiser Permanente Senior Advantage Medicare Part D Plan, ceased

7  coverage after a one month transitional supply was provided.  (AR 153-56.)  Plaintiff requested

8  review of the noncoverage which was affirmed by Kaiser on February 18, 2007.  (AR 125-28.)

9  On March 6, 2007, plaintiff appealed the denial of coverage to an independent review entity that

10  contracts with Centers for Medicare and Medicaid Services.  (AR 105-06.)  The noncoverage

11  decision was upheld on March 15, 2007.  (AR 62-65.)  Plaintiff requested a hearing before an

12  ALJ and a telephonic hearing was held on May 18, 2007.  (AR 145-62.)  The ALJ issued an

13  unfavorable decision on May 23, 2007, finding that Kaiser was not required to cover plaintiff's

14  Viagra prescription.  (AR 12-18.)  Plaintiff then requested review of this decision by the

15  Medicare Appeals Council which issued a decision adopting the ALJ's decision as the final

16  decision of the Secretary of HHS.  (AR 3-6.)  Plaintiff filed the instant action on October 9, 2007.

17  II.  <u>LEGAL STANDARDS</u>

18       A.  <u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

19          "When subject matter jurisdiction is challenged under Federal Rule of Procedure

20  12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  A

21  plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the

22  existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on

23  having the defect called to its attention or on discovering the same, must dismiss the case, unless

24  the defect be corrected by amendment."  <u>Tosco Corporation v. Communities for a Better</u>

25  

26      [5]  Because plaintiff does not dispute these facts as provided by the DHHS, they are accepted as true, as supported by the Administrative Record, filed March 18, 2008.

1  *Environment*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

2          Ordinarily, when "matters outside the pleadings are presented to . . . the court, the

3  motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(c).  However, when

4  there is a factual question about whether a court has jurisdiction, the trial court may consider

5  affidavits or any other evidence properly before the court.  *Sommatino v. United States*, 255 F.3d

6  704, 710 (9th Cir. 2001); *Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

7  Thus, unlike the strict limitations under Rule 12(b)(6) against considering matters outside the

8  complaint, a Rule 12(b)(1) motion may refer to evidence extraneous to the complaint without

9  converting it into a Rule 56 motion for summary judgment.  *Sun Valley Gas v. Ernst Enters.,*

10 *Inc.*, 711 F.2d 138,139 (9th Cir. 1983).

11         B.  *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*

12         In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

13 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

14 it must contain factual allegations sufficient to "raise a right to relief above the speculative

15 level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "'The

16 pleading must contain something more . . . than . . . a statement of facts that merely creates a

17 suspicion [of] a legally cognizable right of action.'"  *Id.*, quoting 5 C. Wright & A. Miller,

18 Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

19         In considering a motion to dismiss, the court must accept as true the allegations of

20 the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.

21 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

22 motion and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421,

23 89 S. Ct. 1843, 1849, *reh'g* *denied*, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

24 that general allegations embrace those specific facts that are necessary to support the claim.'"

25 *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 803

26 (1994), *quoting* *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

1   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2   Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

3          The court may consider facts established by exhibits attached to the complaint.

4   Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

5   consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

6   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

7   papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

8   1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

9   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

10         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

11  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

12  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

13         C.  Summary Judgment Pursuant to Fed. R. Civ. P. 56

14         Summary judgment is appropriate when it is demonstrated that there exists "no

15  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

16  matter of law."  Fed. R. Civ. P. 56(c).

17              Under summary judgment practice, the moving party
                always bears the initial responsibility of informing the district court
18              of the basis for its motion, and identifying those portions of "the
                pleadings, depositions, answers to interrogatories, and admissions
19              on file, together with the affidavits, if any," which it believes
                demonstrate the absence of a genuine issue of material fact.
20

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

22  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

23  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

24  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

25  should be entered, after adequate time for discovery and upon motion, against a party who fails to

26  make a showing sufficient to establish the existence of an element essential to that party's case,

1   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

2   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

3   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

4   should be granted, "so long as whatever is before the district court demonstrates that the standard

5   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

6   2553.

7          If the moving party meets its initial responsibility, the burden then shifts to the

8   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

10  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

11  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

12  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

13  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

14  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

15  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

17  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

18  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

19  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).[6]

20  \\\\\

21  \\\\\

22

---

23          [6]  In the endeavor to establish the existence of a factual dispute, the opposing party need
24  not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed
    factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
25  truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to
    'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
26  trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory
    committee's note on 1963 amendments).

III.  <u>DISCUSSION</u>

Defendant CDHCS seeks dismissal from this action based on lack of subject matter jurisdiction pursuant to the Eleventh Amendment, (Fed. R. Civ. P. 12(b)(1)), failure to state a claim (Fed. R. Civ. P. 12(b)(6)), insufficient service of process (Fed. R. Civ. P. 12(b)(5)), and failure to comply with the Government Claims Act.[7]

Defendant DHHS has filed an opposition and cross-motion for summary judgment based on federal law which excludes Viagra from medical coverage, sovereign immunity, and failure to state a claim (Fed. R. Civ. P. 12(b)(6)).

Plaintiff's motion for summary judgment is two pages long and is limited to repeating some of the allegations in his complaint.  It contains no statement of undisputed facts or evidence, and is in violation of E.D. Local Rule 56-260.  Furthermore, the motion raises for the first time the issue of defendants paying for "10 medications on a nominal fixed income." Pl.'s MSJ at 2.  To the extent that plaintiff raises new claims that were not alleged in his complaint, they will not be addressed.[8]

The issues raised in the parties' separate motions will be combined where appropriate.

A.  <u>Immunity (Damages Claims)</u>

It is well established now that invocation of the Eleventh Amendment does not affect the subject matter jurisdiction of the court.  "The Eleventh Amendment ... does not automatically destroy original jurisdiction.  Rather, the Eleventh Amendment grants the State a

---

[7] Defendant CDHCS raises in its motion the issues of insufficient service of process under Fed. R. Civ. P. 12(b)(5), and that there is no jurisdiction to consider plaintiff's state law claims because plaintiff filed this action prior to a final decision by the California Victim's Compensation and Government Claims Board (formerly the State Board of Control) in response to plaintiff's claim thereto.  Because all parties have had an opportunity to address the merits of the complaint, the court will sidestep these procedural defenses and proceed directly to the substantive issues.

[8] Plaintiff did raise a claim of violation of the ADA in his complaint, but only as to defendant CDHCS; therefore, that claim will be addressed herein.

1  legal power to assert a sovereign immunity defense should it choose to do so." Wisc. Dep't of

2  Corr. v. Schacht, 524 U.S. 381, 389, 118 S.Ct. 204(1998).  However, whether a Rule 12(b)(1) or

3  12(b)(6) standard controls is of no import – the matters presented are purely questions of law.

4          CDHCS initially challenges, on Eleventh Amendment grounds, plaintiff's demand

5  for relief that "Medi-Cal grant plaintiff's TAR requests for Viagra for a bottle of 6 pills at no

6  charge."  This defendant contends that this is a request for monetary relief, or damages, from the

7  state, and is therefore precluded by the Eleventh Amendment's prohibition against the state

8  funding of adverse judgments.

9          DHHS similarly asserts its failure to waive sovereign immunity to be sued for

10  damages.

11          Plaintiff's damages claims are noncognizable against either the federal or state

12  government.  Sovereign immunity protects the federal government from monetary damages

13  awards.  Lane v. Pena, 518 U.S. 187, 200, 116 S. Ct. 2092, 2100 ( 1996).  Absent a statutory

14  waiver of sovereign immunity, the United States cannot be sued and claims against it must be

15  dismissed.  Elias v. Connett, 908 F.2d 521, 527 (9th Cir. 1990); United States v. Mitchell, 445

16  U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980), United States v. King, 395 U.S. 1, 4, 89 S. Ct.

17  1501, 1503 (1969).  Similarly, "[t]he Eleventh Amendment bars suits against the State or its

18  agencies for all types of relief, absent unequivocal consent by the state."  Romano v. Bible, 169

19  F.3d 1182, 1185 (9th Cir.1999) (citing Pennhurst v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900

20  (1984)).[9]  The Eleventh Amendment bars suits against a state for damages unless the state has

21  consented to or waived immunity, or Congress has validly abrogated the same.  Seminole Tribe

22

23      [9]  The Eleventh Amendment states that "[t]he judicial power of the United States shall
24  not be construed to extend to any suit in law or equity, commenced or prosecuted against one of
    the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."
    The Court has extended the provision to protect against suits by citizens against their own states.
25  See Kimel v. Florida Bd. Of Regents, 528 U.S. 62, 72-73, 120 S. Ct. 631(2000); College Savings
    Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-670, 119 S. Ct. 2219
26  (1999).

1   of Florida v. Florida, 517 U.S. 44, 54-55, 116 S.Ct. 1114 (1996).

2           Accordingly, plaintiff may not pursue his claims for restitution or compensatory

3   and punitive damages against either defendant.

4           The CDHCS contends that plaintiff's entire claim in effect seeks damages because

5   plaintiff wants Medi-Cal to pay for his Viagra prescriptions.  CDHCS cites Quern v. Jordan, 440

6   U.S. 332, 337, 99 S.Ct. 1139 (1979), for this proposition.  There, the court found that a district

7   court order requiring state officials to give notice to class members constituted prospective relief

8   under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), as it would require a federal court to

9   enjoin future conduct "even though such an injunction may have an ancillary effect on the state

10  treasury."  Id. at 337.

11          To determine whether the Ex parte Young doctrine avoids the Eleventh

12  Amendment bar to suit against a state, the court should examine whether the complaint alleges an

13  ongoing violation of federal law and seeks relief properly characterized as prospective.  Idaho v.

14  Couer d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); see

15  also, ACS of Fairbanks, Inc. v. GCI Commun. Corp., 321 F.3d 1215, 1216 (9th Cir.2003).  This

16  inquiry into whether suit can be maintained does not include an analysis of the merits of the

17  claim.  Couer d'Alene, 521 U.S. at 281.  An allegation of an ongoing violation of federal law is

18  ordinarily sufficient.  Id.  Here, plaintiff's allegation is sufficient, despite the fact that here the

19  state and federal governments are complying with lawful federal legislation.[10]

20          Focusing on the purpose of the relief sought, it is helpful to consider that relief

21  which serves to compensate a party injured in the past by illegal state action is barred; however,

22  relief which seeks to end an ongoing violation of federal or Constitutional law is not barred

23

24      [10]  Another judge in this district disagreed on a similar matter, finding that because the
    primary purpose behind the lawsuit was to require the State to pay for prescription drugs under
    Medi-Cal, it went beyond equitable relief, and there was no doubt that the asserted action was
25  legal under the statute, thereby removing it from the Ex Parte Young exception.  Medicare and
    Medicaid Independent Living Center of Southern California, Inc. v. Leavitt, Civ. S-06-0435
26  MCE KJM, 2006 WL 1409621 (E.D.Cal. 2006).

1  despite the fact that it may have a "substantial ancillary effect on the state treasury." Cardenas v.

2  Anzai, 311 F.3d 929, 936 (9th Cir. 2002), *quoting* Papasan v. Allain, 478 U.S. 265, 106 S.Ct.

3  2932 (1986).  Furthermore, the court may consider a defendant's past conduct as it pertains to

4  ongoing or future violations without running afoul of the Eleventh Amendment.  Comm. to Save

5  Mokelumne River v. E. Bay Mun. Util. Dist., 13 F.3d 305, 309-10 (9th Cir. 1993).  For example,

6  a breach of trust claim is barred by the Eleventh Amendment because it seeks to correct a past

7  wrong, whereas an equal protection claim has been found to overcome an Eleventh Amendment

8  challenge because "although the current disparity in benefits might have resulted directly from

9  the state's past illegal actions relative to the trust, 'the essence of the equal protection allegation

10 is the present disparity in distribution of the benefits of state-held assets and not the past actions

11 of the State.'" Cardenas, 311 F.3d at 936, *quoting* Papasan, 478 U.S. 282, 106 S.Ct. at 2932.

12 The prospective relief in that case as well as the instant case is plaintiff's attempt to end the

13 disparity via an equal protection claim, and is not barred by the Eleventh Amendment.  The same

14 result obtains in regard to plaintiff's claim under the ADA.

15      Remaining is plaintiff's claim for injunctive relief against both the state and

16 federal governments that would in effect annul implementation of the Medicare Part D

17 prescription drug program.  Plaintiff asserts this remedy is warranted under the U.S. Constitution

18 and the Americans with Disabilities Act.

19      B.  Viagra is Excluded From Medicare Part D Coverage

20      As set forth in this court's previous findings and recommendations in Civ.S. 06-

21 2892 GEB GGH PS, the legal framework underlying the change in plaintiff's prescription drug

22 coverage from MediCal (with no copayments) to Medicare, was clearly set forth by Judge

23 Morrison C. England, in Medicare and Medicaid Independent Living Center of Southern

24 California, Inc. v. Leavitt, Civ. S-06-0435 MCE KJM, 2006 WL 1409621 (E.D. Cal. 2006),

25 wherein Judge England denied plaintiffs' motion to enjoin the MMA to the extent it changed

26 prescription drug coverage for individuals (like plaintiff herein) dually eligible under both

1   Medicare and Medicaid.  As described by Judge England (id., at *1-2):

2        Title XVIII of the Social Security Act, commonly known as the Medicare Act,
         establishes a program of federally subsidized health insurance for the elderly and
3        disabled.  42 U.S.C. §§ 1395, et seq. . . . Through enactment of the MMA,
         Congress provided Medicare coverage for drugs under what is now referred to as
4        Part D of the Medicare program. . . . Part D became effective on January 1, 2006.

5        Another portion of the Social Security Act, Title XIX, establishes a separate
         federal-state program providing medical assistance for categorically low-income
6        persons.  42 U.S.C. §§ 1396, et seq.  This coverage, known as Medicaid, or
         MediCal in California, is administered by the states and funded in part through
7        federal aid so long as each state's program complies with applicable Medicaid
         laws and regulations.  See Alexander v. Choate, 469 U.S. 287, 289, n. 1, 105 S.Ct.
8        712 [] (1985).

9        About 6 million dual eligibles qualify for both Medicare and Medicaid benefits.
         For those individuals, Medicare generally pays first and Medicaid provides
10       protection for services not covered under Medicare.  Prior to enactment of the
         MMA, Medicaid paid for dual eligibles' prescription drugs. . . . [¶ ] Exclusive
11       provision of prescription drugs through Medicaid has changed with the advent of
         the MMA.  Under Part D, Medicare becomes the primary payer for dual eligibles
12       as to all drugs covered under Medicare.  The Medicaid Act was consequently
         amended to provide that Medicaid is not available for such drugs.  42 U.S.C. §
13       1396u-5(d)(1).  The State of California similarly enacted Welfare and Institutions
         Code § 14133.23, which eliminated the provision of drug benefits under MediCal
14       to dual-eligible beneficiaries that would otherwise now be covered under
         Medicare, Part D.

15
         . . . .under Part D, even dual eligibles with incomes not exceeding the poverty
16       level must make a modest co-payment for needed drugs, ranging from $1 for
         generic medicines to $3 for name brands.[11]
17
         Because certain drugs that had been covered under MediCal are not included
18       under Medicare Part D, states may continue to provide Medicaid coverage for
         such drugs, and California has so elected.
19

20            Most recently, and subsequent to the previous Storman case, another statute was

21   enacted which excludes from coverage prescriptions for drugs used to treat sexual or erectile

22   dysfunction, unless the drug was prescribed to treat another condition, such treatment having

23   been approved by the Food and Drug Administration.  42 U.S.C. § 1395w-102(e)(2)(A).

24   _____

25        [11]  "This is a change from prior coverage available to dual eligibles under Medicaid,
     which provided that no services would be denied on account of a beneficiary's 'inability to pay a
26   deduction, cost sharing, or similar charge ...'" 42 U.S.C. § 1396o(e).  [Fn. 2 in original text.]

1  The complaint alleges that plaintiff needs Viagra because he lacks "stamina and

2  energy due to numerous conditions including major depression, Tourette Syndrome,

3  hemochromatosis, Barrett's disease, an anxiety disorder and acid reflux."  Compl. at 3.  The

4  exhibits to the complaint and the administrative record indicate that Viagra was prescribed to

5  plaintiff for treatment of sexual dysfunction.  Plaintiff testified that he took it for this purpose.

6  Compl., Ex. at 8; AR at 154, 160-61.  The Food and Drug Administration has approved the use

7  of Viagra for no treatment other than sexual dysfunction.  AR at 44-48.  On May 23, 2007, an

8  ALJ affirmed the denial of coverage of this drug.  AR at 15-18.  The statute is clear and the

9  Secretary's decision was correct.  Therefore, the DHHS is entitled to summary judgment on

10  plaintiff's claim that he is entitled to coverage for this drug.

11  C.  Failure to State a Claim (12(b)(6))

12  1.  Equal Protection

13  Plaintiff asserts that the exclusion of Viagra from Medicare's Part D constitutes

14  gender discrimination.  He also claims that it "prevents men from living a life guaranteed by life

15  liberty and the pursuit of happiness under the U.S. Constitution."  Compl. at 2.

16  "The Equal Protection Clause of the Fourteenth Amendment commands that no

17  State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

18  essentially a direction that all persons similarly situated should be treated alike."  City of

19  Cleburne v. Cleburne Living Center, 473 U.S. 432, 440-41,105 S.Ct. 3249, 3254-55 (1985),

20  quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

21  Plaintiff has not provided support for his basic premise, that the legislation at

22  issue is gender based.  The exclusion in the MMA to which plaintiff objects specifies only that

23  drugs used to treat sexual or erectile dysfunction are excluded.  42 U.S.C. § 1395w-102(e)(2)(A).

24  Sexual dysfunction includes erectile dysfunction as a subset and the term, "sexual" is not gender

25  specific.  If there were prescription drugs which could be prescribed to women for sexual

26  dysfunction, they would also be excluded.  Therefore, the legislation can only be analyzed as

13

1   potentially having an impact on individuals who cannot afford to buy these drugs.  Unlike gender

2   which calls for a heightened standard of review, legislation which causes an economic impact is

3   analyzed under a rational basis standard.  City of Cleburne, 473 U.S. at 440-41,105 S.Ct. at 3254-

4   55.

5           It has long been held that the due process clauses of both the Fifth and Fourteenth

6   Amendments are intended to prevent governmental abuse of power; however, they "generally

7   confer no affirmative right to governmental aid."  DeShaney v. Winnebago County Dep't of Soc.

8   Servs., 489 U.S. 189, 196, 109 S.Ct. 998, 1003 (1989).

9           Equal protection is not a license for courts to judge the wisdom,
            fairness, or logic of legislative choices. In areas of social and
10          economic policy, a statutory classification that neither proceeds
            along suspect lines nor infringes fundamental constitutional rights
11          must be upheld against equal protection challenge if there is any
            reasonably conceivable state of facts that could provide a rational
12          basis for the classification.

13          ...

14          Moreover, because we never require a legislature to articulate its
            reasons for enacting a statute, it is entirely irrelevant for
15          constitutional purposes whether the conceived reason for the
            challenged distinction actually motivated the legislature. United
16          States Railroad Retirement Bd. v. Fritz, supra, 449 U.S., at 179,
            101 S.Ct., at 461.

17

18   F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313,113 S.Ct. 2096, 2101 (1993).

19           Here, DHHS has provided citation indicating the intent of Congress to limit public

20   funds for drugs relating to sexual dysfunction due to their high cost and potential threat to the

21   financial stability of Medicare.  151 Cong. Rec. H5105-05, 2005 WL 1492977 at *H5128.  It

22   should be added that at least some members of Congress did not think the government should

23   subsidize recreational sex.  Id.  This stated intent goes beyond the mere speculation required for a

24   rational basis analysis, and is therefore more than sufficient.[12]  Evidence or empirical data is not

25   _____

26      [12]  Even if Congress had failed to state its intent, that fact would be irrelevant.  Heller v.
     Doe by Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642 (1993).

1   required.  Beach Communications, 508 U.S. at 315, 113 S.Ct. at 2102.

2          Plaintiff has the burden to "negative every conceivable basis which might

3   support" the legislation, Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct.

4   1001, 1006 (1974), and he has failed to do so.  Therefore, his equal protection claim fails.

5          2.  ADA

6          Plaintiff next claims that the "California Medical Director," in denying his request

7   for coverage of Viagra due to medical necessity, violated his rights under Title II of the

8   Americans With Disabilities Act ("ADA").[13]  Compl. at 3.

9          The ADA broadly prohibits discrimination against individuals with disabilities.

10  42 U.S.C. §§ 12101 et seq.  Title II of the ADA prohibits, inter alia, discrimination in the

11  provision of services and programs by a public entity.  42 U.S.C. §§ 12131 et seq.  To allege a

12  prima facie case under Title II, plaintiff must allege (1) he is a qualified individual with a

13  disability;[14] (2) he was excluded from participation in or otherwise discriminated against with

14  regard to a public entity's services, programs, or activities, and (3) such exclusion or

15  discrimination was by reason of his disability.  Lovell v. Chandler,  303 F.3d 1039, 1052 (9th

16  Cir. 2002); see also Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1995).

17

18      [13]  Although plaintiff does not make his ADA claim against the DHHS, such a claim
    would be precluded in any event as the ADA does not apply to the federal government, but is
19  limited primarily to state or local governments.  42 U.S.C. § 12131(1); Cellular Phone Taskforce
    v. F.C.C., 217 F.3d 72, 73 (2nd Cir. 2000).

20

21      [14]  A "disability" is defined as a "(A) a physical or mental impairment that substantially
    limits one or more of the major life activities of such individual; (B) a record of such an
22  impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  To
    state a claim under 42 U.S.C. § 12102(2)(A), a plaintiff must demonstrate that she (1) has a
23  mental or physical impairment that (2) substantially limits (3) a major life activity.  Bragdon v.
    Abbott, 524 U.S. 624, 631 (1998).  "The ADA does not define 'substantially limits,' but
24  'substantially' suggests 'considerable' or 'specified to a large degree.'  Sutton v. United Air
    Lines, Inc., 527 U.S. 471, 491 (1999).  "[T]o be substantially limited . . . an individual must have
25  an impairment that prevents or severely restricts the individual from doing activities that are of
    central importance to most people's daily lives.  The impairment's impact must also be
26  permanent or long term."  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198
    (2002) (citation omitted).

15

1    Plaintiff's ADA claim against the state must fail.  While there is no question that

2    the Eleventh Amendment's grant of state sovereign immunity has been abrogated by Title II of

3    the ADA, <u>Phiffer v. Columbia River Correctional Institute</u>, 384 F.3d 791, 792 (9th Cir. 2004),

4    Title II creates a private cause of action against the States only for conduct that actually violates

5    the Fourteenth Amendment, <u>U.S. v. Georgia</u>, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006).

6    Plaintiff must show he suffered intentional discrimination due to a disability, which he is unable

7    to do.

8    The ADA provides in part that "no qualified individual with a disability shall, by

9    reason of such disability, be excluded from participation in or be denied the benefits of the

10   services, programs, or activities of a public entity, or be subjected to discrimination by any such

11   entity." 42 U.S.C. § 12132.  Although plaintiff might otherwise be a qualified individual by

12   virtue of his other medical conditions, the exclusion for drugs such as Viagra under Medicare

13   Part D renders him an unqualified individual for this purpose.  In other words, plaintiff is not

14   excluded from coverage for Viagra prescriptions because of any disability he might have.

15   Furthermore, the federal statute which excludes Viagra from Medicare Part D

16   controls over the ADA.  By enacting the MMA, Congress foreclosed a right of action under the

17   ADA for discrimination based on a disability due to deprivation of certain prescription drugs.

18   The expressed intent of Congress, as discussed *supra*, was to save money by preserving funds for

19   future Medicare recipients, not to prevent individuals with disabilities from obtaining

20   medication.  Medi-Cal is merely complying with Federal and State law by following 42 U.S.C. §

21   1395w-102(e)(2)(A) and Cal. Welf. & Inst. Code § 14133.23.  In other words, the more general

22   ADA federal statute cannot trump the more specific Medicare/Medicaid statute.  Accordingly,

23   plaintiff cannot claim discrimination on the basis of a disability, and any claim based on the

24   ADA is without merit.

25   \\\\\

26   \\\\\

IV.  <u>CONCLUSION</u>

        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

        1.  The motion to dismiss filed by defendant CDHCS on April 11, 2008, be granted;

        2. The motion for summary judgment filed by plaintiff on April 15, 2008, be denied;

        3.  The cross-motion for summary judgment filed by defendant CDHCS on June 16, 2008, be granted;

        4.  The cross-motion filed by defendant DHHS on June 16, 2008 be granted; and

        5.  This action be dismissed with prejudice and judgment be entered in favor of defendants.

        These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 02/04/09                /s/ Gregory G. Hollows

                                  _____
                                  GREGORY G. HOLLOWS
                                  UNITED STATES MAGISTRATE JUDGE

GGH5/076:Storman2113.f&r